UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-245-MOC

| MALEENA RECTOR, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| | ) | |
| ROBERT DENNIS BURNETTE, III, | ) | |
| *in his individual capacity*, | ) | |
| MADISON COUNTY BOARD OF | ) | |
| EDUCATION, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on a Motion to Dismiss, filed by Defendant Madison County Board of Education. (Doc. No. 3). Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing Plaintiff's claim under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681.

I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Maleena Rector was a ninth-grade student at Madison High School during the 2020-2021 school year. (Doc. No. 1-1 ¶¶ 1, 9). Defendant Robert Burnette was Rector's math teacher for the fall semester. (Id. ¶ 10). On or about September 18, 2020, Rector believed she saw Burnette take a photo of her during class. (Id. ¶ 13). Rector confronted Burnette and reported the incident to her mother. (Id. ¶¶ 14, 17). Rector's mother reported the incident to the school principal. (Id. ¶ 17). The principal told Rector's mother he would investigate the incident. (Id. ¶ 18). Burnette lied to Rector and the principal about taking a photo of Rector. (Doc. No. 1-1 ¶ 55).

1

About two weeks after Rector's mother's report, the principal notified Rector's mother of his investigation findings, which did not find a basis for disciplining Burnette. (Id. ¶ 20). Rector did not report any incidents involving Burnette other than her September 18, 2020 report. (Id. ¶¶ 9–36). In May 2022, Burnette was arrested and criminally charged for taking photos of students on his cell phone. (Id. ¶¶ 32–33).

Plaintiff originally filed this lawsuit in state court, naming Burnette and Madison County Board of Education ("the Board") as Defendants. On September 26, 2024, Defendants removed the action to this Court. (Doc. No. 1). Plaintiff alleged three claims against the Board: liability under Title IX based on sexual harassment; negligence under state law; and negligent supervision under state law. On October 7, 2024, the Board filed the pending motion to dismiss. (Doc. No. 3). On October 21, 2024, Plaintiff filed a response, in which Plaintiff agreed to the dismissal of the state law claims against the Board. (Doc. No. 8). Thus, only the Title IX claim remains against the Board.

II.     STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), the Court must accept as true all of the factual allegations in the Complaint and draw all reasonable inferences in the light most favorable to the plaintiff. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007). However, to survive a Rule 12(b)(6) motion, "[f]actual allegations must be enough to raise a right to relief above the speculative level," with the complaint having "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550

U.S. at 555). A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." Id. at 679 (citations omitted).

### III. DISCUSSION

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C. § 1681(a). To allege a claim under Title IX against an institution based on sexual harassment in the Fourth Circuit, a plaintiff must demonstrate: (1) the plaintiff was a student at an educational institution receiving federal funds, (2) the plaintiff was subjected to harassment based on their sex, (3) the harassment was sufficiently severe or pervasive to create a hostile environment in an educational program or activity, and (4) there is a basis for imputing liability to the institution. Jennings v. Univ. of N.C., 482 F.3d 686, 695 (4th Cir. 2007). The fourth element requires showing a basis for imputing liability to the Board, which requires factual allegations that an official with authority to address sexual harassment through corrective action had actual knowledge of it and acted with deliberate indifference. Id. at 700.

The Supreme Court has clearly articulated an intentionally narrow standard for "actual knowledge" for purposes of Title IX. In Davis v. Monroe County Board of Education, the Supreme Court confirmed that a school district may only be liable for harassment where "the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." 526 U.S. 629, 633 (1999). A school district may be liable only if it had "actual knowledge" of "harassment that is so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." Id. at 633, 642. In

3

citing its landmark ruling on Title IX liability in Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 290 (1998), the Davis Court explained that it not only had rejected the use of agency principles to impute liability to a school district for teacher misconduct, but it also had "declined the invitation to impose liability under what amounted to a negligence standard – holding the district liable for its failure to react to teacher-student harassment of which it knew or should have known." 526 U.S. at 642. Moreover, the Davis Court made clear that school officials must subjectively know about "acts" of harassment before liability may attach. Id. That is, the Court held that mere allegations, or risks, or rumors of sexual harassment are insufficient for liability. E.g., id. (confirming that a school district may be liable for damages only by "remaining deliberately indifferent to acts of teacher-student harassment of which it had actual knowledge").

In Baynard v. Malone, the Fourth Circuit applied Gebser and Davis to clarify the actual notice an educational institution must receive to incur monetary liability under Title IX. 268 F.3d 228 (4th Cir. 2001). Baynard expressly rejected the premise that "actual notice of a substantial risk of ongoing sexual abuse" is sufficient to show actual knowledge of harassment. Id. at 237–38 (emphasis in original). Rather, the Baynard Court confirmed that "Title IX liability may be imposed only upon a showing that the school district officials possessed actual knowledge of the discriminatory conduct in question." Id. The Court also emphasized that Davis foreclosed institutional liability for "failure to react to teacher-student harassment of which [the school district] knew or should have known," and, instead, limited liability to cases involving sexual harassment about which school officials have "actual knowledge[.]" Id.

The Court finds that, for several reasons, the Title IX claim against the Board must be dismissed. First, Plaintiff's Complaint alleges negligence, at most, by the Board. Plaintiff's Complaint does not allege that the school principal subjectively knew in 2020 that any alleged

4

sexual harassment had actually occurred. Plaintiff's Complaint even alleges that Defendant Burnette lied to the school principal when the principal was investigating Rector's mother's report. (Doc. No. 1-1 ¶ 55). The Complaint alleges the principal followed up with Rector and her mother after investigating and let them know he could not find a basis to substantiate disciplining Rector. (Id. ¶ 20).

Additionally, and in any event, the acts alleged to violate Title VII do not amount to sexual harassment as that term is legally defined. The Supreme Court has described harassment as "discriminatory intimidation, ridicule, and insult." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 65 (1986) (assessing harassment in the Title VII context)). The Fourth Circuit has articulated a similar standard in the context of Title IX claims, stating that "[s]exual harassment occurs when the victim is subjected to sex-specific language that is aimed to humiliate, ridicule, or intimidate." Jennings, 482 F.3d at 695. The EEOC defines harassment as "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature. . . ." 29 C.F.R. § 1604.11(a) (2015). "Taken together, a claim of sexual harassment must allege sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult." Doe v. Salisbury Univ., 107 F. Supp. 3d 481, 488 (D. Md. 2015). Here, the initial report made in September 2020 was limited simply to an allegation that Defendant Burnette took a photograph of Plaintiff. (Doc. No. 1-1 ¶ 17). Plaintiff does not allege any "sex-specific conduct aimed to humiliate, ridicule, intimidate, or insult," nor did the Complaint contain an allegation of an unwelcome sexual advance, request for a sexual favor, or other verbal or physical conduct of a sexual nature. Thus, the Title IX claim is subject to dismissal for this additional reason.

Finally, in the context of student-teacher sexual harassment, the "authority to take

5

corrective action" under Title IX means the ability to fire or discipline the teacher in question. Baynard, 268 F.3d at 238–39. When addressing the question of whether a school principal is an appropriate "official" under Title IX, the Fourth Circuit found in Baynard that, under Virginia law, "no rational jury could find that [the principal] was invested with the power to take corrective action on behalf of the [school board] . . . [W]hether a supervisory employee may be viewed as the proxy of the school district depends upon whether the district has delegated to that employee the traditional powers of an employer, e.g., the authority to hire and terminate employees." Id. As in Baynard, "[c]ritically absent from the scope of a principal's authority" in North Carolina "are the powers that would make a principal the proxy of the school district: the power to hire, fire, transfer, or suspend teachers." Id. at 239; N.C. GEN. STAT. § 115C-276(j) (stating it is the duty of the superintendent to recommend and the Board of Education to elect all school personnel). Rather, only a school superintendent may make recommendations regarding such matters to local boards of education. N.C. GEN. STAT. §§ 115C-276(j), 115C-325.6 (stating that "[a] teacher may not be dismissed, demoted, or reduced to part-time employment for disciplinary reasons . . . except upon the superintendent's recommendation based on one or more grounds in G.S. 115C-325.4"); N.C. GEN. STAT. § 115C-325.5 (providing that only a board of education can order a disciplinary suspension without pay against a teacher); Trivette v. Yount, 366 N.C. 303, 310–11 (2012).

     Here, Plaintiff's Complaint alleges the school principal had authority to take corrective action to address sexual harassment under Title IX. (See Doc. No. 1-1 ¶ 56). Under North Carolina law, however, as the school principal, Burnette did not have authority to hire and terminate employees. Thus, under Baynard, no school official with authority to take corrective action had actual knowledge of sexual harassment of Plaintiff. The Title IX claim against the

Board must be dismissed for this additional reason.

In response to the motion to dismiss, Plaintiff relies on Doe v. Fairfax County School Board, 1 F.4th 257 (4th Cir. 2021) to argue that the Board had actual knowledge of a report of sexual harassment when Plaintiff's mother reported to the school principal that Defendant Burnette may have taken a photo of Plaintiff during class. (Doc. No. 1-1 ¶ 17). Fairfax County School Board involved student-on-student harassment and is factually distinguishable from this action. Here, in contrast to the allegations in Fairfax, the Complaint does not allege that Plaintiff's mother reported "sexual harassment" to the principal, as that term is legally defined.[1] Thus, Fairfax County School Board does not save Plaintiff from dismissal of the Title IX claim against the Board.

For all these reasons, the Court grants Defendant Board's motion to dismiss Plaintiff's Title IX claim.

## IV.     CONCLUSION

For the reasons stated herein, the Court grants Defendant's motion to dismiss Plaintiff's Title IX claim against Defendant Board. Thus, Defendant Board is dismissed from this action.

---

[1] This Court recently discussed Fairfax, stating:

> This dicta by the Fourth Circuit ought not be construed to mean that allegations indicating a possibility of harassment are enough to put an employer on notice. The Fourth Circuit was simply recognizing that if the allegations are insufficient to even indicate a possibility of sexual harassment, those allegations are certainly insufficient to constitute actual notice of a plaintiff's claim of harassment. Instead, as per the Fourth Circuit's actual holding, the focus is whether '[the] report . . . can objectively be taken to allege sexual harassment.'

Strickland v. United States, No. 20-66, 2024 WL 4122889, at *4 (W.D.N.C. Sept. 9, 2024) (quoting Fairfax Cnty. Sch. Bd., 1 F.4th at 263).

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant Board's Motion to Dismiss, (Doc. No. 3), is **GRANTED**, and the Board is dismissed from this action.

Signed: November 22, 2024

Max O. Cogburn Jr
United States District Judge